IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ELIAS GIPP, SKYLAR GIPP (minor), and SHAYLA GIPP (minor), through CORRINE KOPP, their Natural and/or Legal Guardian,<br><br>Plaintiffs,<br><br>vs.<br><br>RAYMOND WEBB and GARY SANDLAND, JR.,<br><br>Defendants. | Case No. _____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiffs Elias, Skylar, and Shayla Gipp through Corrine Kopp, their mother and Natural and/or Legal Guardian, state and allege as follows:

1. This is a *Bivens* action for money damages arising out of the violation of George "Ryan" Gipp, Jr.'s Constitutional rights by Defendants Raymond Webb and Gary Sandland, Jr., whom, while acting under the color of federal law, conducted an improper search and seizure, and used unreasonably excessive force against Ryan Gipp, killing him and depriving his children of their father.

## JURISDICTION AND VENUE

2. Plaintiffs bring this action pursuant to Fourth Amendment and Fifth Amendment violations under *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971).

3. This Court has subject matter jurisdiction under 28 U.S.C § 1331 because Plaintiffs allege violations of the United States Constitution, including illegal search and seizure, during which the defendant BIA officers used excessive deadly force.

Page 1 of 8

4. Venue is proper in the United States District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391(b) in that the events giving rise to this action occurred in Sioux County, North Dakota.

## PARTIES

5. Plaintiff Corrine Kopp is a North Dakota resident residing in Sioux County, Fort Yates, North Dakota. Ms. Kopp is the mother and natural guardian of Ryan Gipp's minor children (Plaintiffs Skylar and Shayla Gipp) and the mother and legal guardian of Plaintiff Elias Gipp, an adult, disabled son of Ryan Gipp.

6. Ryan Gipp's children have the authority under N.D.C.C. 32-21-03 to bring a wrongful death suit for their father's wrongful death.

7. Upon information and belief, Defendants Raymond Webb and Gary Sandland, Jr. are, and were at all material times, residents of North Dakota.

8. At all material times, Defendants Webb and Sandland were officers of the Federal Bureau of Indian Affairs, acting under the color of federal law. They are being sued in their individual capacities.

## FACTUAL ALLEGATIONS

9. On Monday, October 23, 2017, Ryan Gipp had been out turkey hunting with his mother, Roberta Gipp, and father, George Gipp, during the day. At the end of the day, around 7:30 p.m., the family stopped at a gas station.

10. While attempting to eject a shell, Ryan Gipp's shotgun was accidentally discharged. There was no one in the vicinity of where the gun was pointed. This shotgun was the only weapon in the vehicle or on the Gipps.

11. Seeing no harm done, Roberta Gipp began to drive the Gipp family back home.

12. Bureau of Indian Affairs ("BIA") officers learned from dispatch that a shotgun had been fired.

13. On the way home, the Gipps were pursued by BIA agents, including Defendants Webb and Sandland.

14. Eleven officers were involved, not including two public safety dispatchers.

15. In an effort to play it safe, Ryan Gipp threw the only weapon available, the shotgun used for hunting, out the window of the vehicle before Roberta Gipp stopped the vehicle.

16. Once the vehicle came to a stop, BIA officers directed the Gipps to exit the vehicle. All three Gipp family members complied.

17. Ryan Gipp exited the vehicle and complied with all instructions given by the officers.

18. Defendants Webb and Sandland were able to perform a visual check of Ryan Gipp and could see that he was unarmed.

19. At 8:07 p.m., an officer advised over the shared radio that they were "okay."

20. The officers then instructed Ryan Gipp to pick keys up off the ground and walk with his hands in the air toward the officers. Ryan Gipp complied.

21. Ryan Gipp was unarmed. He did not attempt to punch, hit, or kick any of the Defendants or other officers, and he posed no threat of death or serious bodily injury to anyone.

22. Despite his compliance with all instructions given to him, the officers tasered Ryan Gipp without warning. Ryan Gipp was tasered several times.

23. Ryan Gipp, bewildered and posing no threat of danger to the officers or anybody nearby, began to run into a nearby ditch in an attempt to escape the pain.

24. Defendants Webb and Sandland shot Ryan Gipp at least five times in the back while Ryan Gipp was in the process of running.

25. At 8:09 p.m., an officer advised, "SHOTS FIRED SHOTS FIRED!"

26. The only shots fired on the scene were from Defendants Webb and Sandland.

27. At around 8:39 p.m., Ryan Gipp was declared dead by Emergency Medical Services, as a result of the gunshot wounds from Defendants Webb and Sandland.

28. Only later in the evening, at 10:12 p.m., was a shell casing finally found at the gas station.

29. As a direct and proximate cause of Defendants Webb and Sandland's illegal acts of conducting an improper search and seizure, and shooting Ryan Gipp in the back while he was unarmed and non-threatening, Ryan Gipp sustained fatal injuries.

30. Defendants' acts, as federal officers, deprived Ryan Gipp of his rights under the United States Constitution, and Defendants' unreasonable use of deadly force resulted in Ryan Gipp's wrongful death.

31. Plaintiff Corrine Kopp is the Natural Guardian for the minor children of decedent Ryan Gipp, Shayla Gipp and Skylar Gipp. Plaintiff Corrine Kopp is the Legal Guardian for Elias Gipp, the disabled adult son of Ryan Gipp, pursuant to Standing Rock Sioux Tribal Court's Order dated January 3, 2019.

32. As a result of Ryan Gipp's death, Ryan Gipp's children have sustained damages including lost benefits of a parental relationship such as emotional and financial support, the full amount of said damages to be proven at trial.

## COUNT I
### Fourth and Fifth Amendment – Detention and Arrest
### *Bivens* Action

Plaintiffs restate each of the preceding allegations and further allege:

33. Defendants Webb and Sandland were federal agents acting under the color of federal law at all material times as officers of the Bureau of Indian Affairs.

34. Ryan Gipp had a constitutionally-protected right not to be searched and seized without proper cause.

35. Defendants Webb and Sandland violated Ryan Gipp's protected rights when they detained Ryan Gipp without reasonable suspicion, and attempted arrest without probable cause. Prior to this encounter, Defendants had no information that Ryan Gipp had committed any crime. Prior to and during this encounter, Defendants had no probable cause to arrest Ryan Gipp.

36. Defendants Webb and Sandland are thereby liable for the previously-described Fifth and Fourth Amendment violations under the common law doctrine established in *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971).

37. As a direct and proximate result of Defendants Webb and Sandland's acts and omissions, Ryan Gipp was wrongfully searched, wrongfully seized, wrongfully tasered, wrongfully killed.

38.     As a direct result of the wrongful and untimely death of their father, Plaintiffs sustained tremendous losses, including pain, suffering, grief, mental anguish, emotional distress, loss of society, loss of support, financial loss, loss of comfort and companionship, loss of enjoyment of life, and other pecuniary damages.

39.     Plaintiffs lack a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy.

40.     An appropriate remedy, namely damages, exists under *Bivens* and may be imposed.

## COUNT II
### Fourth and Fifth Amendment – Excessive Force
### *Bivens* Action

Plaintiffs restate each of the preceding allegations and further allege:

41.     Defendants Webb and Sandland were federal agents acting under the color of federal law at all material times as officers of the Bureau of Indian Affairs.

42.     Ryan Gipp had a constitutionally protected right to be free from excessive use of force during the course of a detention or arrest.

43.     Defendants Webb and Sandland violated Ryan Gipp's protected rights when they unreasonably tasered Ryan Gipp and shot him several times in the back. Ryan Gipp, at most, was an unarmed fleeing suspect and did not reasonably pose any imminent danger to the officers or others. Prior to this encounter, Defendants had no information that Ryan Gipp had committed any crime.

44. Defendants Webb and Sandland's use of excessive force against Ryan Gipp was so malicious, willful, and with deliberate indifference to Ryan Gipp's safety and constitutional rights, that the act shocks the conscience.

45. Defendants Webb and Sandland are thereby liable for the previously-described Fifth and Fourth Amendment violations under the common law doctrine established in *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971).

46. As a direct and proximate result of Defendants Webb and Sandland's acts and omissions, Ryan Gipp was wrongfully searched, wrongfully seized, wrongfully tasered, wrongfully killed.

47. As a direct result of the wrongful and untimely death of their father, Plaintiffs sustained tremendous losses, including pain, suffering, grief, mental anguish, emotional distress, loss of society, loss of support, financial loss, loss of comfort and companionship, loss of enjoyment of life, and other pecuniary damages.

48. Because Defendants' conduct was malicious, willful, and recklessly indifferent to Ryan Gipp's Constitutional rights, Defendants are liable also for exemplary damages in an amount to be determined by the jury.

49. Plaintiffs lack a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy.

50. An appropriate remedy, namely damages, exists under *Bivens* and may be imposed.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff Corrine Kopp, as Natural and/or Legal Guardian for the Plaintiffs who are children of decedent George "Ryan" Gipp, Jr. seeks judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000), jointly and severally, for all damages in an amount to be determined by the jury, together with costs and disbursements, exemplary damages, interest, attorneys fees, and all such other relief as the Court deems just.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL.**

Dated: 9.25.19

**CONLIN LAW FIRM LLC**

*Stacy Deery Stennes*
Thomas J. Conlin, 06023
Stacy Deery Stennes, 07228

600 Highway 169 South, Suite 1650
Minneapolis, MN 55426
Telephone: (952) 252-0490
Facsimile: (952) 252-0489
tom@conlinlawfirm.com
stacy@conlinlawfirm.com

**MARTENS PLLC**

James W. Marten, 06495

402 East Main Avenue, Suite 100
Bismarck, North Dakota 58501
Telephone: (701) 223-2000
jwmartens@martenspllc.com

**ATTORNEYS FOR PLAINTIFFS**