IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ELIAS GIPP, SG 1 (minor), and SG 2 (minor), through CORRINE KOPP, their Natural and/or Legal Guardian,<br><br>Plaintiffs,<br><br>v.<br><br>RAYMOND WEBB, GARY SANDLAND, JR., and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 1:19-cv-00213<br><br>**ANSWER OF UNITED STATES OF AMERICA TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

The United States of America, by Nicholas W. Chase, Acting United States Attorney for the District of North Dakota, James Patrick Thomas, Tara Vavrosky Iversen, and Sarah E. Wall, Assistant United States Attorneys, on behalf of defendant United States of America ("United States") for its answer to Second Amended Complaint and Demand for Jury Trial ("Second Amended Complaint"), Doc. 24, of Elias Gipp, SG 1, and SG 2 through Corrine Kopp, their Natural and/or Legal Guardian (collectively "Plaintiffs"), alleges and states:

Unless admitted, qualified, or otherwise answered herein, the United States generally denies each and every allegation in the Second Amended Complaint.

1.  The United States admits Plaintiffs bring their Second Amended Complaint under the Federal Tort Claims Act ("FTCA") and pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396 (1971). The United States denies the remaining allegations contained in paragraph 1 of the Second Amended Complaint.

2.  In response to the allegations contained in paragraph 2 of the Second Amended Complaint, the United States avers it received a written SF-95 administrative claim submission from Plaintiffs on June 26, 2019. The United States further avers it issued a denial of the

1

administrative claim on February 21, 2020. The United States admits the Second Amended Complaint was "timely" under 28 U.S.C. § 2675(a) insofar as it was filed after the expiration of six months from the United States' receipt of the administrative claim; the United States is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 2 of the Second Amended Complaint.

## JURISDICTION AND VENUE

3. The United States admits Plaintiffs allege violations of the United States Constitution. The United States denies BIA officers used excessive deadly force. The remainder of the allegations in paragraph 3 of the Second Amended Complaint call for a legal conclusion, and the United States is without knowledge or information sufficient to form a belief about the truth of those allegations.

4. Paragraph 4 of the Second Amended Complaint calls for a legal conclusion; the United States is without sufficient knowledge or information to form a belief as to the truth of those allegations.

5. To the extent Plaintiffs have a claim against the United States, the United States admits venue is proper in the United States District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b) in that the events giving rise to this action occurred in Sioux County, North Dakota.

## PARTIES

6. The United States is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 6 of the Second Amended Complaint.

7. The United States is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 7 of the Second Amended Complaint.

8. The United States is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 8 of the Second Amended Complaint.

9. In response to the allegations contained in paragraph 9 of the Second Amended Complaint, the United States avers defendants Raymond Webb ("Officer Webb") and Gary Sandland, Jr. ("Officer Sandland") were law enforcement officers employed by the Bureau of Indian Affairs on October 23, 2017 and were acting under color of law. The United States admits Officers Webb and Sandland are being sued in their individual capacities.

10. The United States admits Officers Webb and Sandland were within the scope of their employment when George "Ryan" Gipp, Jr. ("Ryan Gipp") was shot and that the United States is sued for the death of Ryan Gipp. The United States denies the remaining allegations in paragraph 10 of the Second Amended Complaint.

## FACTUAL ALLEGATIONS

11. The United States is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11 of the Second Amended Complaint.

12. The United States denies there was no one in the vicinity of where Ryan Gipp fired his shotgun. The United States denies Ryan Gipp's Mossberg 500 12-gauge shotgun, loaded with six rounds of Federal 12-gauge 2¾ inch 70mm rifled slug rounds, was the only weapon in the vehicle or in the possession of the Gipps and avers the Gipps had in their vehicle or in their possession numerous other weapons and weapons accessories including, but not limited to:

    a.     one Alabama Slammer 440 stainless steel bayonet;

    b.     Ruger Brand .22 caliber magazine containing 10 rounds;

    c.     two sets of Nunchakus;

d. one container of fifteen 300 Win Mag Hornady rounds;

e. one container of ten 300 Win Mag rounds;

f. one box of Hornady 300 Win Mag rounds;

g. one box of Browning 300 Win Mag rounds;

h. four Federal 300 Win Mag rounds;

i. two 300 Win Mag rounds;

j. two rounds of 5.56 X 45 ammunition;

k. one leather sheath containing one 440 stainless steel folding pocket knife;

l. nine rounds of .25-06 ammunition;

m. two sets of brass knuckles;

n. one Protector Series, Model 1502 Rifle Case;

o. one Camo Compac Make-up Kit;

p. one DPMS AR Buttstock;

q. GPS Grip Pod System;

r. one chamber safety flag;

s. one Hoegemeyer Hybrids Brand Stainless Barlow Multi Tool;

t. one empty box of Winchester 3" 12-gauge Double 00 buckshot shells;

u. one spent 3" 00 buckshot shell;

v. two Kent 12-gauge #4 shot shells;

w. one high-carbon steel camo pocket knife;

x. one Gerber sheath and one Gerber BG fixed-blade knife;

y. one Ruger BX-25 Double 25-round magazine containing an unknown amount of .22 caliber rounds.

      z.      one unopened twenty-round box of AE .22 Remington cartridges;

      aa.      one full twenty-round box of Hornady Precision Hunter .300 Win Mag ammunition;

      bb.      one round .300 Win Mag;

      cc.      one opened box of AE 5.56 x 45mm ammunition, containing an unknown amount of mixed ammunition;

      dd.      one nylon sheath containing 2CR Multi-Tool;

      ee.      two 30-round AR magazines, taped together, containing an unknown number of rounds;

      ff.      two loose rounds of ammunition (unspecified);

      gg.      shotgun shell;

      hh.      box cutter;

      ii.      knife; and

      jj.      AR15 stock wrench.

Further, when law enforcement found Ryan Gipp's shotgun, which George Gipp said was thrown from the Gipp vehicle during the police pursuit, the shotgun had the 13 1/8" long Alabama Slammer Bowie knife, and a flashlight, taped to the gun barrel, bayonet-style. The United States is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 12 of the Second Amended Complaint.

      13.      The United States is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 of the Second Amended Complaint.

      14.      The United States avers a call was placed to Bureau of Indian Affairs ("BIA") Standing Rock Agency police dispatch informing dispatch a gun had been fired at Hagel's Gas

Station.  The United States is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 14 of the Second Amended Complaint.

15.     In response to the allegations contained in paragraph 15 of the Second Amended Complaint, the United States avers Officers Webb and Sandland responded to reports that a shot had been fired at the gas station and were attempting to locate the car in which the Gipps were traveling.  The United States denies any officers other than Officers Webb and Sandland responded to those reports and the United States is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 15 of the Second Amended Complaint.

16.     In response to the allegations contained in paragraph 16 of the Second Amended Complaint, the United States avers Officers Webb and Sandland were the only officers present when Ryan Gipp was shot.  Other BIA law enforcement officers subsequently responded to the scene of the shooting.  The United States further avers one dispatch officer received the call from the gas station that a gun had been fired, and a second dispatch officer handled the dispatch for the follow-up investigation that occurred.

17.     The United States denies the loaded Mossberg 500 12-gauge shotgun, with the 13 1/8" long Alabama Slammer Bowie knife taped to the gun barrel, bayonet-style, was the only weapon available to Ryan Gipp; the United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Second Amended Complaint.

18.     In response to the allegations contained in paragraph 18 of the Second Amended Complaint, the United States avers Officer Webb ordered the driver and two passengers of the

vehicle to exit the vehicle one at a time and to walk backwards towards him. The United States admits Roberta Gipp and George Gipp exited the vehicle and complied with Officer Webb's orders. The United States denies Ryan Gipp complied with the Officers' orders.

19. In response to the allegations contained in paragraph 19 of the Second Amended Complaint, the United States avers Ryan Gipp eventually exited the vehicle. The United States denies the remaining allegations contained in paragraph 19.

20. The United States denies the allegations contained in paragraph 20 of the Second Amended Complaint.

21. In response to the allegations contained in paragraph 21, the United States avers the dispatch log indicates that at approximately 8:06 p.m. an officer responded to a radio status check by stating "okay" and denies the remaining allegations.

22. In response to the allegations contained in paragraph 22 of the Second Amended Complaint, the United States denies the Officers instructed Ryan Gipp to pick keys up off the ground and walk with his hands in the air toward the Officers; the United States avers Officer Webb instructed Ryan Gipp to exit the vehicle and walk backwards towards the officers with his hands in the air. The United States further avers Ryan Gipp refused to comply with orders issued by the Officers.

23. In response to the allegations contained in paragraph 23 of the Second Amended Complaint, the United States is without knowledge or information sufficient to form a belief as to the truth of whether Ryan Gipp did not attempt to punch, hit, or kick Officers Webb or Sandland. The United States denies any officers other than Officers Webb and Sandland were present. The United States denies the remaining allegations contained in paragraph 23 of the Second Amended Complaint.

24. The United States denies the allegations contained in paragraph 24 of the Second Amended Complaint.

25. The United States denies the allegations contained in paragraph 25 of the Second Amended Complaint.

26. The United States denies the allegations contained in paragraph 26 of the Second Amended Complaint.

27. In response to the allegations contained in paragraph 27 of the Second Amended Complaint, the United States avers the BIA dispatch log indicates that at approximately 8:09 p.m., Officer Sandland advised "shots fired shots fired."

28. In response to the allegations contained in paragraph 28 of the Second Amended Complaint, the United States avers the only gunshots fired at the scene of the high-risk stop were fired by Officer Webb. The United States denies Officer Sandland fired any gunshots at the scene of the high-risk stop. The United States further avers Ryan Gipp fired a gunshot at Hagel's gas station in Fort Yates approximately 17 minutes earlier.

29. In response to the allegations contained in paragraph 29 of the Second Amended Complaint, the United States avers Officer Sandland did not fire any gunshots. The United States is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 29 of the Second Amended Complaint.

30. In response to the allegations contained in paragraph 30 of the Second Amended Complaint, the United States admits a shell casing was found at Hagel's gas station at approximately 10:12 p.m.

31. In response to the allegations contained in paragraph 31 of the Second Amended Complaint, the United States denies Officer Sandland shot Ryan Gipp and further denies Officer

8

Webb's act of shooting was illegal. The United States further denies Ryan Gipp was unarmed and non-threatening. To the extent the remaining allegations call for a legal conclusion, the United States is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 31 of the Second Amended Complaint.

32. The United States denies the allegations contained in paragraph 32 of the Second Amended Complaint.

33. The United States is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 33 of the Second Amended Complaint.

34. The United States denies the allegations contained in paragraph 34 of the Second Amended Complaint.

## COUNT I
### Fourth Amendment – Excessive Force
### <u>Bivens</u> Action

The unnumbered paragraph preceding paragraph 35 is an adoption and incorporation of the preceding numbered paragraphs of the Second Amended Complaint. As its answer to this paragraph, the United States restates and incorporates by reference its answers as set forth in the preceding paragraphs.

35. The United States admits the allegations contained in paragraph 35 of the Second Amended Complaint.

36. The allegations in paragraph 36 of the Second Amended Complaint call for a legal conclusion, accordingly the United States is without knowledge or information sufficient to form a belief about the truth of the allegations.

37. The United States denies the allegations contained in paragraph 37 of the Second Amended Complaint.

38. The United States denies the allegations contained in paragraph 38 of the Second Amended Complaint.

39. The United States denies the allegations contained in paragraph 39 of the Second Amended Complaint.

40. The United States denies the allegations contained in paragraph 40 of the Second Amended Complaint.

41. The United States denies the allegations contained in paragraph 41 of the Second Amended Complaint.

42. The United States denies the allegations contained in paragraph 42 of the Second Amended Complaint.

43. The United States is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 43 of the Second Amended Complaint.

44. The United States denies the allegations contained in paragraph 44 of the Second Amended Complaint.

## COUNT II
### Assault and Battery
### FTCA Action

The unnumbered paragraph preceding paragraph 45 is an adoption and incorporation of the preceding numbered paragraphs of the Second Amended Complaint.  As its answer to this paragraph, the United States restates and incorporates by reference its answers as set forth in the preceding paragraphs.

45. The allegations in paragraph 45 of the Second Amended Complaint call for a legal conclusion, accordingly the United States is without knowledge or information sufficient to form a belief about the truth of the allegations.

46.     The United States admits the allegations of paragraph 46 of the Second Amended Complaint to the extent such allegations are consistent with the law in the State of North Dakota, otherwise denies the allegations to the extent they are inconsistent with the law in the State of North Dakota.

47.     The United States denies the allegations contained in paragraph 47 of the Second Amended Complaint.

48.     The United States denies the allegations contained in paragraph 48 of the Second Amended Complaint.

49.     The United States admits the allegations in paragraph 49 of the Second Amended Complaint.

50.     The United States denies the allegations contained in paragraph 50 of the Second Amended Complaint.

51.     The United denies the allegations contained in paragraph 51 of the Second Amended Complaint.

**COUNT III**
**Negligence**
**FTCA Action**

The unnumbered paragraph preceding paragraph 52 is an adoption and incorporation of the preceding numbered paragraphs of the Second Amended Complaint.  As its answer to this paragraph, the United States restates and incorporates by reference its answers as set forth in the preceding paragraphs.

52.     The allegations in paragraph 52 of the Second Amended Complaint call for a legal conclusion, accordingly the United States is without knowledge or information sufficient to form a belief about the truth of the allegations.

53. The allegations in paragraph 53 of the Second Amended Complaint call for a legal conclusion, accordingly the United States is without knowledge or information sufficient to form a belief about the truth of the allegations.

54. The United States denies the allegations contained in paragraph 54 of the Second Amended Complaint.

55. The United States denies the allegations contained in paragraph 55 of the Second Amended Complaint.

56. The United States denies the allegations contained in paragraph 56 of the Second Amended Complaint.

57. The United States denies the allegations contained in paragraph 57 of the Second Amended Complaint.

58. The United States denies the allegations contained in paragraph 58 of the Second Amended Complaint.

## COUNT IV
### Direct Negligence of BIA
### FTCA Action

The unnumbered paragraph preceding paragraph 59 is an adoption and incorporation of the preceding numbered paragraphs of the Second Amended Complaint. As its answer to this paragraph, the United States restates and incorporates by reference its answers as set forth in the preceding paragraphs.

59. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

60. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

61. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

62. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

63. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

64. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

65. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

66. The Court dismissed Count IV of the Second Amended Complaint by Order Granting, In Part, and Denying, In Part, Partial Motion to Dismiss, April 29, 2021, Doc. 43; no response is required.

## DEMAND FOR JUDGMENT

The Second Amended Complaint's Demand for Judgment paragraph contains a demand for relief to which no response is deemed necessary. To the extent a response is deemed necessary, the United States denies the same.

## AFFIRMATIVE DEFENSES

The United States denies all allegations of the Second Amended Complaint, including prayers for relief, not expressly admitted in this Answer. The following defenses are applicable, where appropriate, to Plaintiffs' claims for relief.

1. Any claims not administratively exhausted, as required by the FTCA, are barred.

2. The United States is immune from liability and the Court lacks subject-matter jurisdiction over any of Plaintiffs' claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or federal employee. 28 U.S.C. § 2680(a).

3. The Court lacks subject-matter jurisdiction to hear those claims for which Plaintiffs are unable to establish a claim pursuant to 28 U.S.C. § 1346.

4. The United States, through its employees and agents, acted with due care and diligence at all relevant times. 28 U.S.C. § 2680(a).

5. The United States' actions were at all times done in good faith and in furtherance of lawful law enforcement objectives.

6. Plaintiffs' Second Amended Complaint alleges Constitutional claims not actionable against the United States under the FTCA.

7. Plaintiffs are not entitled to a jury trial because any action against the United States shall, pursuant to 28 U.S.C. § 1346, be tried by the Court without a jury.

8. Plaintiffs' recovery, if any, is limited to damages recoverable under the FTCA.

9. The United States is entitled to all limitations on liability and damages applicable to the action as set forth in North Dakota law, the FTCA, and any other applicable law.

10. Plaintiffs' recovery, if any, is limited to the amount sought by them administratively. 28 U.S.C. §§ 2675(b) and 1346(b).

11. Plaintiffs may not recover exemplary or punitive damages against the United States. 28 U.S.C. § 2674.

12. Plaintiffs may not recover pre-judgment interest against the United States. 28 U.S.C. § 2674.

13. To the extent, if any, the Court enters a money judgment against the United States, Plaintiffs are entitled to post-judgment interest only in accordance with the provisions of 28 U.S.C. § 1961(b) and 31 U.S.C. § 1304(b).

14. To the extent a private person would not be liable to Plaintiffs under North Dakota laws for the conduct alleged, no private analogue exists, and the FTCA does not waive sovereign immunity. 28 U.S.C. § 1346(b)(1).

15. Plaintiffs are not entitled to costs or attorney fees from the United States, pursuant to 28 U.S.C. § 2412(d)(1)(A). Pursuant to 28 U.S.C. § 2678 attorney fees are specifically limited to 25% of any judgment rendered or settlement made, and any attorney who charges, demands, receives, or collects more than is statutorily allowed shall be fined or imprisoned or both.

16. To the extent, if any, the United States is found liable for any damages to Plaintiffs, the United States is entitled to an offset or credit for any past and future benefits provided or to be provided, or paid or to be paid to Plaintiffs by or through the United States or its agencies (including but not limited to the Department of Health and Human Services

("HHS"), Social Security Administration, and the HHS Indian Health Service), as a result of any injury alleged in the Second Amended Complaint, and is further entitled to an offset of any other benefits received by Plaintiffs and not excluded from consideration by the collateral source rules. N.D.C.C. § 32-03.2-06.

17. To the extent, if any, Plaintiffs failed to mitigate their damages, recovery should be reduced.

18. With respect to Plaintiffs' negligence claim, the United States is entitled to invoke the sudden-emergency doctrine pursuant to North Dakota law under which a tortfeasor's negligence is excused or mitigated when confronted with circumstances constituting a sudden danger or emergency.

19. The Second Amended Complaint fails to state a claim upon which relief can be granted.

20. Plaintiffs' recovery, if any, may be reduced or barred by the comparative fault of Plaintiffs or other persons. N.D.C.C. § 32-03.2-02.

21. Ryan Gipp's comparative fault is attributed to Plaintiffs pursuant to N.D.C.C. § 32-03.2-02 and N.D.C.C. § 32-21-01.

22. Plaintiffs' claim for joint and several liability is barred or limited by N.D.C.C. § 32-03.2-02.

23. Ryan Gipp assumed the risk of injury or death by resisting arrest and not complying with lawful orders of law enforcement. The injuries that resulted were from a danger whose existence and character were fully appreciated by Ryan Gipp before he voluntarily exposed himself to it.

24. Plaintiffs cannot recover for both an intentional tort claim and a negligent tort claim premised on the same conduct.

25. Under North Dakota law, there is a presumption that an officer performs his duty correctly and acts with ordinary caution and in good faith. That presumption prevails unless overcome by definite evidence to the contrary.

26. Under North Dakota law an officer making arrest is under no obligation to retreat but has both the legal right and official duty to press forward and accomplish his object by overcoming any resistance offered.

27. Under North Dakota law, law enforcement officers have a qualified privilege to use necessary force in effectuating an arrest. N.D.C.C. § 29-06-13.

28. The amount of force used by the United States was objectively reasonable under the facts and circumstances known at the time force was used.

29. Under North Dakota law, an individual may use any force necessary to protect his person; the force used must be no more than the individual reasonably believed necessary at that time to provide the necessary protection.

30. Under North Dakota law, conduct engaged in by a public servant in the course of the person's official duties is justified when it is required or authorized by law; the United States' use of force was required or authorized by law. N.D.C.C. § 12.1-05-02.

31. Under North Dakota law, Officer Webb was justified in using force upon Ryan Gipp in order to defend Officers Webb and Sandland. N.D.C.C. §§ 12.1-05-03, 12.1-05-04.

32. Under North Dakota law, use of deadly force against Ryan Gipp was justified because it was expressly authorized by law, used in lawful self-defense or in lawful defense of

others, and because the law enforcement officers authorized to effect arrests or prevent escapes in the performance of their duties had no duty to retreat or avoid force. N.D.C.C. § 12.1-05-07.

33. Under North Dakota law, use of deadly force against Ryan Gipp was justified to effect an arrest or to prevent the escape from custody of an individual who has committed or attempted to commit a felony involving violence, or is attempting to escape by the use of a deadly weapon, or has otherwise indicated that the individual is likely to endanger human life or to inflict serious bodily injury unless apprehended without delay. N.D.C.C. § 12.1-05-07.

34. Under North Dakota law, an individual who uses force as permitted under N.D.C.C. Ch. 12.1-05, Chapter 12.1-05. Justification--Excuse--Affirmative Defenses, is immune from civil liability for the use of the force to the individual against whom force was used or to that individual's estate, and the Court shall award reasonable attorneys fees, loss of income, court costs, and disbursements incurred by the defendant in defense of any civil action brought by a plaintiff if the Court finds the defendant is immune from civil liability as provided in § 12.1-05-07.2(1). N.D.C.C. § 12.1-05-07.2; N.D. Civil Jury Inst. C - 12.05, Justifiable Response to Assault 2013.

35. Under North Dakota law, a person's conduct is excused if the person believes that the facts are such that the person's conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under N.D.C.C. Ch. 12.1-05, even though the belief is mistaken. N.D.C.C. § 12.1-05-08.

36. Plaintiffs fail to plead facts sufficient to allow the Court to determine whether there was an identifiable, established duty owned to Plaintiffs under North Dakota law under the facts of this case.

37. Plaintiffs' claims do not validly allege a negligent or wrongful act by an employee of the United States.

38. No acts or omissions by the United States were the proximate cause of any injury to Plaintiffs.

39. In the event the United States is found to have been negligent, which negligence is denied, the superseding and intervening negligence of third parties, for whom the United States cannot be held liable, broke any causal connection between the United States' negligence and Plaintiffs' alleged injury, cutting off the legal effect of the United States' negligence.

40. The United States asserts it may have additional defenses which are not known at this time, but which may be ascertained through discovery. The United States specifically preserves such other affirmative defenses.

WHEREFORE, the United States prays for judgment as follows:

(1) That Plaintiffs' claims and causes of action be dismissed with prejudice on the merits;

(2) That the United States be awarded costs, disbursements, and any other amounts allowable by law; and

(3)   Any other relief the Court deems just and equitable.

Dated: May 12, 2021

                        NICHOLAS W. CHASE
                        Acting United States Attorney

By:   */s/ James Patrick Thomas*
      JAMES PATRICK THOMAS
      ND Bar ID 06014
      TARA VAVROSKY IVERSEN
      MN Bar ID 0387790
      SARAH E. WALL
      ND Bar ID 07822
      Assistant United States Attorneys
      P.O. Box 699
      Bismarck, ND 58502-0699
      (701) 530-2420
      james.p.thomas@usdoj.gov
      tara.iversen@usdoj.gov
      sarah.wall@usdoj.gov

      Attorneys for United States of America